CITY OF BEAUMONT, Appellant,

v.

Velma HENDERSON, Appellee.

No. 6410.

Court of Civil Appeals of Texas.

Beaumont.

June 15, 1961.

Rehearing Denied Aug. 15, 1961.

King, Sharfstein & Rienstra, George E. Murphy, City Atty., Beaumont, for appellant.

Alto V. Watson, Beaumont, for appellee.

HIGHTOWER, Justice.

Velma Henderson, a feme sole, recovered judgment of $16,740 against the City of Beaumont by reason of personal injuries she received as a result of a fall when she stepped into a hole in a public sidewalk in Beaumont, Texas. Trial was to a jury which found, in substance, in answer to (Issue No. 4) that the defect in the sidewalk where plaintiff fell was not trivial; (Issue No. 5) that the defect had existed for sufficient length of time prior to the accident for the City, in the exercise of ordinary care, to have known of the same and repaired it; (Issue No. 6) that the City was negligent in allowing the said defect to exist for such period of time; (Issue No. 7) that such negligence was a proximate cause of plaintiff's injuries; (Issue No. 13) that the defect was not so slight and trivial in character that an injury therefrom could not have been reasonably anticipated by an ordinarily prudent person. The City predicates its appeal upon its motion for instructed verdict and amended motion for new trial, both of which were overruled by the trial court, and both of which fully embraced the points of error relied upon by the City here. Under those of the first 18 points which are briefed, the essence of the City's contentions is that the defect in the sidewalk was so trivial that it had no duty to repair the same and therefore no liability existed as a matter of law.

Recounting some of the pertinent testimony, after appellee left her place of work on October 25, 1955, she was walking in a generally easterly direction on the sidewalk adjacent the Morgan & Lindsey store on the north side of Forsythe Street in the City of Beaumont when her right heel went down in a hole throwing her to her left side onto the sidewalk. She was wearing wide heels from 1½ to 2 inches in height and her whole heel went into the hole which was deeper than the heel of her shoe. This was about 5:45 p. m., it was a rather cloudy day, the street lights were on and it was rather dark. There were many people walking along there because all of the stores had just turned out. People were walking in both directions.

The sidewalk at this point was estimated by appellee as being 12 feet in width from the Morgan & Lindsey building to the curb. Parking meters were near here about two or three feet from the curb. At the time she fell, appellee was walking on the north side of the parking meters on the right hand side of the sidewalk going east, about two feet from the parking meters. After she fell, two men from Morgan & Lindsey came out of the store and brought her a chair when they saw that she was in pain and screaming. After she sat down in the chair, she wanted to see what happened and there was a hole there and it was filled with broken cement and gravel. She looked at it because she wanted to know why she fell. She described the hole she saw as being in the shape of a triangle about 6 or 8 inches on either side and two or two and a half inches deep, and again as being 5 or 6 inches along each side. She testified that she did not see the hole before she stepped into it.

Two photographs, one facing east and one facing west, were introduced into evidence by counsel for appellee showing substantially the condition of the sidewalk at the time she fell there. She drew a cir-

cle with a white pencil around the triangular hole on both pictures into which her right foot stepped. She testified that regardless of whether she estimated the size of the hole to be 6 or 8 inches or two feet, whatever her estimate was, the triangular hole she circled on the photographs is the hole into which her heel stepped.

We believe it to be a fair and correct statement of the record to say that it is therein overwhelmingly established that the defect in question had existed in substantially the same condition for at least 19 months prior to the date of injury, and that the City, through its agents, servants and employees, knew of such defect or that by the use of reasonable diligence should have known of the same. Moreover, the record establishes without dispute that for the 7 or 8 years next preceding the date of the injury the City had consciously disavowed any duty or responsibility for the repair and maintenance of its sidewalks and had consistently declined to attend them.

In support of its contention of no liability as a matter of law, the City urges the cases of City of Galveston v. Dazet, Tex., 19 S.W. 142; Stinnett v. City of Waco, 1944, 142 Tex. 648, 180 S.W.2d 433, and City of San Antonio v. Chabot, Tex.Civ.App.1958, 318 S.W.2d 485, ref. n. r. e., as controlling. The appellee relies heavily on City of Houston v. Cambeilh, Tex.Civ.App.1960, 333 S.W.2d 192, ref. n. r. e. In the Stinnett case the sidewalk block was broken and elevated 1¾ inches. Plaintiff "caught" her heel on the broken block. The defect was on a heavily traveled residential sidewalk. The Supreme Court affirmed a judgment which held the defect to be trivial as a matter of law. In the Dazet case, plaintiff was driving a two-wheel cart when one wheel was caught by a metal surveyor's monument which projected less than 2 inches above the street surface. The cart was caught and damaged thereon and the defect was held to be trivial as a matter of law. The Chabot case involved a small

hole in a sidewalk in downtown San Antonio in which plaintiff caught her heel and fell. The hole was less than one inch deep after the dirt and debris had been removed. The court, following the Stinnett case, held that hole to be trivial as a matter of law. In the Cambeilh case the accident happened on a crosswalk in the street at the intersection of Main and McKinney Streets in downtown Houston. The hole in the crosswalk which caused plaintiff's fall was, according to the minimum measurements given by any witness, as much as 2 inches deep, 4 inches wide and 7 inches long. The court concluded it could not be said, as a matter of law, under all the facts and circumstances that the City could not reasonably foresee that a pedestrian would not be injured. So, we are confronted with the situation where one well reasoned opinion, mindful of the rule laid down in the Stinnett case, concludes that a hole 2 inches deep, 4 inches wide and 7 inches long is an issuable fact for a jury's determination; one holding that less than a 2 inch projection of a surveyor's pipe in a city street is not; one that a 1¾ inch elevation of a sidewalk section is not and a similar holding in regard to a small hole less than one inch deep in a sidewalk. However, it needs only a cursory examination of the cases cited to determine that they are not arbitrary holdings, but rest upon strong and careful reasoning. Each recognizes the cardinal principles of law on which the answer to the question before us must rest, namely: (1) a municipality must exercise ordinary care in constructing reasonably safe sidewalks and streets and in maintaining them, but it is not an insurer of the safety of those places and it is only where the defect is such that a reasonably prudent man would not permit it to continue, because likely to produce hurt, that liability exists. (2) The depth or height of a defect cannot alone be the test of a municipality's negligence and is only one element to be considered along with all other facts and circumstances in determining liability.

The Cambeilh case, supra, is not distinguishable from the Chabot case, supra, by reason of the fact that the defect in one instance existed in a public sidewalk while in the other it existed in a crosswalk of a public street. "Obviously the same rule is applicable to a sidewalk that is applied to a street. * * * Nor can a general rule be laid down that will properly fit all cases. Each case must be considered under its own peculiar facts." Stinnett v. City of Waco, supra, 180 S.W. 2d at page 434.

In addition to the testimony of appellee, hereinabove, the two photographic exhibits heretofore referred to depicting the defect as it existed on the date of the accident, October 25, 1955, were testified to by Mr. Wilson, witness for appellee, as substantially portraying the defective condition of the sidewalk as it existed for approximately 19 months up to the date of the accident. The photographs in question, substantiated by ample testimony, reflect that the hole which caused appellee's fall was actually only a small portion of a much larger defect which stretched across the full 12 feet of the sidewalk in question. Mr. Wilson further testified that in March, 1954, he had himself stepped into a portion of this aperture and came very near falling. He stated that in a part of this larger defect stretching across the sidewalk, a foot or two from the hole in which appellee stepped, there was a larger hole that he could have gotten half of his leg into. From an examination of these photographs, this latter statement of Mr. Wilson appears to be somewhat exaggerated, but such statement does, we think, correctly accentuate the overall need of repairs of the sidewalk at the place in question.

Additionally, Mr. D. H. Smith, employed by the City as Maintenance Supervisor, part of his duties being general supervision of sidewalks, testified, in substance, that had he observed the hole of no larger than 6 inches wide and no more than 2 inches in depth in October of 1955 he would have caused it to be repaired as he recognized the danger of a person wearing high heels getting the heel caught in a crack that wide and falling and hurting himself.

■ Another fact which the City urges us to consider is that inasmuch as there are more than 250 miles of sidewalks in it that to hold it responsible for failing to repair defects of this size and nature would place an unjust and onerous burden upon it, amounting to a determination that it is an insurer of the safety of its sidewalks. That may be one element to consider, but we doubt that it is entitled to much weight. It is common knowledge that the downtown mileage of public sidewalks in a city the size of Beaumont is negligible compared with the mileage of its sidewalks in the residential areas. Moreover, the law provides no exceptions of such nature for such reason. But a much greater responsibility devolves upon a city to repair a hole of the size in question in a downtown heavily traveled sidewalk where pedestrians are often known to be hurrying and impatient and of necessity must frequently neglect to step as carefully as they might otherwise do in order to avoid colliding with pedestrian traffic, parking meters, lamp posts, mail boxes and other obstacles frequently encountered in such areas. And surely there is no case wherein it has been seriously argued that a city is an insurer of the safety of its sidewalks and the appellee does not attempt to do so here. Conversely, we are aware of no rule of law to the effect that a city is immune to liability in respect to all holes in its sidewalks and streets other than those wherein a bathtub might comfortably fit.

■ By reason of the strong guiding rules laid down by all the authorities hereinabove discussed for determination of the question presented here, we are of the opinion the City's contentions should be overruled. This triangular hole of 6 or 8 inches on either side and 2½ inches deep, part of a 12 foot defect, which caused

appellee to fall, in our opinion presented a question of fact for a jury's determination. The composite elements of this case are quite analogous to those in the Cambeilh case, supra, and we hold similarly that it could not be said as a matter of law under all the facts and circumstances presented here that the City could not reasonably foresee that a pedestrian might be injured.

■ The City's 18th point complains that during the voir dire examination of the jury panel, in response to the following question propounded by counsel for appellee, "Do any of you know of any reason why you would not make a fair and impartial juror for the trial of this cause?" one L. W. Kontz, a member of said jury panel answered, "I don't want to make any long speech about it here, but I am generally acquainted with the conditions of the streets and sidewalks of the City of Beaumont and I am fed up with them." Whereupon counsel for the City moved the court to strike the jury panel, to declare a mistrial and to secure a new jury panel from which to select a jury for the trial of the cause. This motion was overruled.

We do not believe this statement of the juror constituted reversible error and the City refers us to no decision so holding. Those decisions to which we are referred relate only to a juror giving new evidence to the rest of the jury in the form of his personal knowledge during deliberations before a verdict reached. If harm was wrought by the statement, an expression from the court to all the jurors present to disregard would have cured the harm. No such instruction was requested by the City.

■ Under its 19th and 20th points of error, the City complains of the following arguments of counsel for appellee to the jury:

"The last issue you have is the issue with respect to money—'What do you find from a preponderance of the evidence to be the sum of money, if any,

if paid now in cash, would fairly and reasonably compensate the plaintiff for the damage, if any, proximately caused, if you so find, to the plaintiff by the negligence, if any, of the defendant.' And the court tells you three or four things you can consider, one of them is her loss of earnings from that date until now, that is $1760.00 right there; one of them is her medical bill to now from the time of the accident, that's $1249.80 right there, and then you can consider what physical pain and what mental anguish she has had for the last four and a half years, and what physical pain and mental anguish she is going to have for the balance of her life, and I submit to you, ladies and gentlemen, the answer to Special Issue No. 14, if you write in there the sum of $49,000.00 that you will not over compensate this lady for her injuries, and that you will instruct the City of Beaumont to take care of their sidewalks * * *"

"Certainly it was not trivial crack and in December, 1958, Mr. Smith recognized that such a crack was not a trivial crack, or one which people would not be calculated to injure themselves in. Now, then, that makes it real simple, the City not only negligently failed to repair this sidewalk, they deliberately failed, they were there with the stuff, right there in that street, and it wouldn't have taken but a minute to do it, but they didn't do it, they didn't do it and they have to answer for that default in that connection; and how much better it is that the 120,000 citizens bear this tremendous loss, rather than this nice lady * * *."

To these portions of the argument, counsel for the City promptly objected, which objections were sustained by the court and the jury was instructed not to consider them. We are of the opinion that the court's instruction not to consider

was sufficient to cure the errors, if any. The City does not question the sufficiency of the evidence to support the award of damages by the jury, and we do not regard them as excessive in the circumstances. We do not believe that the last portion of the first argument set out above, "and that you will instruct the City of Beaumont to take care of their sidewalks" amounted to a plea to the jury to penalize the City for failure to repair its sidewalks and to exact punitive damages from it. Appellee's suit being for $49,000, and serious, expensive and painful damages having resulted to appellee by reason of the injuries, we do not believe that the sum awarded her reflects any vice in the arguments complained of, singly or combined. Moreover, the appellee's brief asserts that the jury was in most instances composed of citizens of the City of Beaumont. This being so, it is our opinion in regard to the latter part of the second portion of the argument quoted above, "and, how much better it is that the 120,000 citizens bear this tremendous loss, rather than this nice lady * * *" more than offsets any harm that may have befallen the City, if any, for the reason that its effect was to admonish the Beaumont citizens of the jury that a portion of any sum awarded the appellee would be extracted from their pockets as taxpayers of the City. The City's 19th and 20th points are overruled.

■ Under its 21st through 25th points, the City complains of the following instruction in the court's charge: "You are instructed by the court, according to law, that the City of Beaumont at all times material hereto had the duty to exercise ordinary care to maintain the sidewalk in question in a reasonably safe condition for the use of pedestrians using such sidewalk in the exercise of ordinary care."

The objections to said instruction by the City of Beaumont are that such instruction constitutes a general charge whereas this cause is submitted upon special issues;

that such instruction does not relate to any special issue submitted by the court in its charge nor is such instruction given in connection with a definition of any term used in the court's charge; that such instruction constitutes a comment by the court on the evidence in that it in effect tells the jury that the sidewalk in question was not in a reasonably safe condition for the use of pedestrians; that such instruction coupled with the fact that Mrs. Henderson fell in effect instructs the jury that the City of Beaumont did not discharge its duty and was negligent under the circumstances, and that such instruction is prejudicial to the City of Beaumont in that it directs the jurors' attention to a specific sidewalk on which Mrs. Henderson fell and since it is undisputed that she fell, the jury in effect is told by the court that the City violated its duty with respect to maintaining the sidewalk in question where Mrs. Henderson fell; that under Rule 277, Texas Rules of Civil Procedure, the giving of a general charge in a special issue case constitutes reversible error, (1) where it is not "necessary to enable the jury to properly pass upon and render a verdict on such issues", and (2) where it is calculated to prejudice one of the parties before the jury, citing Boaz v. White's Auto Stores, 1943, 141 Tex. 366, 172 S.W.2d 481, and Mosby v. Texas & P. Ry. Co., Tex.Civ.App., 191 S.W.2d 55, no writ history.

In her brief the appellee has ably replied to the foregoing contentions of the City, and we adopt such reply as a correct statement of the law and facts in the premises:

"The testimony of Mr. Smith argued the point that the City had no responsibility for maintaining the sidewalk in question, and it became necessary for the jury to intelligently pass upon the issues to know whether or not there was any duty upon the City to maintain the sidewalk. It was undisputed that the sidewalk in question where the appellee fell was a public sidewalk of the City of Beaumont and un-

der the supervision of Mr. Smith, the maintenance supervisor for the City.

"The charge given was an absolutely correct statement of the law and the appellant does not even claim that the charge did not correctly state the law. The court evidently felt that for the jury to intelligently pass upon the issues they should know whether or not there was any duty upon the City. The charge did not in any way intimate to the jury how they should answer any issue, nor did the charge instruct the jury on any ultimate issue of fact necessary to support the judgment. It simply correctly stated the law applicable.

"Under Rule 277, T.R.C.P., and as stated in City of Fort Worth v. Lee [Tex.Civ. App.], 182 S.W.2d 831, affirmed [143 Tex. 551] 186 S.W.2d 954 [159 A.L.R. 125], p. 836:

"'Whatever may have been the rule applicable to such a charge before the adoption of our present rules of civil procedure, we believe that the charge was authorized by Rule 277, Texas Texas Rules of Civil Procedure, which provides that the court shall submit such explanatory instructions and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on the special issues, and that in such instance the charge shall not be subject to the objection that it is a general charge. The only decisions cited by the City are those in which trial was had before the adoption of the present rules. The law of the charge, as applied to the facts of this case, appears to be correct.'

In that case, the charge was ([186 S.W.2d] p. 835–836):

"'"The Jury is instructed that Joseph B. Fleming, Trustee for Chicago, Rock Island & Gulf Ry. Co. had no authority whatsoever over the roads and streets in the City of Fort

Worth, and such roads and streets are under the exclusive control of the municipal authorities, and Joseph B. Fleming, Trustee, and the railway company for which he was Trustee, had no control or authority over the establishment, location and grade of the streets within the City of Fort Worth." '

This is, in effect, the same instruction given in this case and is the nearest case in point in Texas. The case cited by appellant of Mosby v. Texas & P. Ry. Co. (Tex.Civ.App., 1945), 191 S.W.2d 55, is not in point. There the court only held that the charge was a general charge and might have been properly eliminated on objection, but the court did not pass on whether the error was reversible or harmless. The court did recognize the proper rule, however, as follows:

"'There is no question but that it it a general charge, but under Rule 277, Rules of Civil Procedure, the mere fact that it is a general charge does not constitute it reversible error. The rule authorizes the giving of a general instruction or charge in a special issue case where necessary to enable the jury to properly pass upon and render a verdict on the issues.'

"Boaz v. White's Auto Stores, 141 Tex. 266 [366], 172 S.W.2d 481, was a case in which the court affirmatively instructed the jury that the driver of the truck was guilty of negligence in driving at a rate of speed in excess of 25 miles per hour, and in correspondence with the jury this instruction was emphasized. This type of instruction, of course, which actually passes upon an ultimate issue rather than simply stating the law applicable to the situation, was calculated to prejudice that particular jury.

"However, in the instant case, there existed doubt as to whether the City had any duty to maintain the sidewalk and it was necessary, for the jury to intelligently pass upon the issues, that they be instruct-

ed in this connection as to the correct law applicable. This situation was injected into the record by Mr. Smith, the maintenance supervisor for the City, who testified in effect that the City had no such duty, and therefore there was 'good need' for this instruction, as contemplated by the article by Judge J. D. Dooley in 20 Texas Law Review, p. 36, quoted from in the Boaz case."

All points of error of the City of Beaumont are overruled, and the judgment of the trial court is affirmed.