MARION C. WARNER, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

First District (2nd Division)    No. 60227

Opinion filed October 5, 1976.—Modified upon denial of rehearing December 10, 1976.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale, Marsile J. Hughes, and Robert Redtke, Assistant Corporation Counsel, of counsel), for appellant.

Philip E. Howard, Ltd., of Chicago (William J. Harte, Ltd., of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Following a jury trial, plaintiff recovered a judgment in the amount of $53,996.00 against the City of Chicago (City) for damages resulting from the alleged negligence of the City in the maintenance of one of its sidewalks. On appeal the City raises the following issues: (1) is the City an insurer against accidents upon sidewalks; (2) was certain evidence improperly admitted by the trial court; and (3) was the jury verdict against the manifest weight of the evidence.

On March 26, 1965, around 9:30 a.m., the plaintiff, who resided at 4918 North Ridgeway Avenue in Chicago, left her home and walked north on the sidewalk on the west side of Ridgeway. She wore galoshes over her low-heeled shoes. Although it had snowed on the previous day, the sidewalk had been shoveled. However, fresh-fallen snow was on the sidewalk when she walked north, and she walked on a light path made by people walking on the sidewalk. Approximately one-half hour later, plaintiff, on her way home, returned walking south over the same route and following the same light path in the reverse direction. Newly fallen, slippery snow was on the sidewalk. She stubbed her toe and stumbled over a raised part of the sidewalk. She lost her balance and fell on her right hip and wrist.[1] She got up and hobbled to her home a few doors

---

[1] The nature and extent of plaintiff's injuries are not in dispute. Consequently they are not discussed in this opinion.

away. She described the sidewalk as cracked with one part higher than the other. The higher part of the sidewalk was about two inches above the lower part. She remembered talking to a city policeman after she was admitted to the hospital and testified she did not tell him she had slipped on the ice.

The plaintiff identified a photograph of a sidewalk in front of 4944 North Ridgeway as the way the sidewalk looked, without snow, on the day of the accident. She also identified on the photograph the location of a path through the snow—on which she was walking at the time of the incident—indicating that the path ran along the edge of the sidewalk on the east side closer to the street.

The photograph depicts a parkway hedge next to the east line of the sidewalk, and one of the photographs showed the particular point claimed by plaintiff to be the cause of her fall. This photograph illustrated that on that part of a slab nearest the hedge, the corner was broken off.

A Chicago police officer who interviewed her at the hospital testified the plaintiff told him that she fell at about 4954 North Ridgeway, that she did not specifically mention any defect in the sidewalk, and that he did not ask her the cause of her fall.

The trial court admitted certain photographs of the sidewalk in question after they had been identified by a witness who testified she was familiar with the sidewalk, and that the condition of the sidewalk as depicted in the photographs had been the same for 10 years before the incident. The photographs did not show any snow or ice on the sidewalk. The witness further testified that she visited the plaintiff when plaintiff returned from the hospital, was told by the plaintiff that plaintiff tripped and fell, and plaintiff did not say she slipped on the ice.

The City presented evidence that in November 1970 (at the time of the trial), the sidewalk, identified on a photograph as the spot of incident, was six feet wide and had a tilt of 1⅛ inches at the east edge to zero at the west edge, and the sidewalk was the same then as it was 5½ years after the accident. Also one witness testified that since 1968 the City record shows that no complaint had been received concerning the sidewalk at 4944 North Ridgeway.

In response to certain interrogatories, the jury found that the City was negligent in the maintenance of the sidewalk which was the proximate cause of the injury to the plaintiff; that the snow and ice were not the proximate cause of the injury; and the plaintiff was not negligent in her conduct at the time of the occurrence.

The record indicates that the City filed on December 21, 1970, a post-trial motion setting forth various reasons why judgment should be entered in favor of the City notwithstanding the verdict, a new trial should be granted, or the verdict and judgment vacated and a smaller verdict

entered. This post-trial motion was not denied until November 29, 1973, the trial court noting that notice of filing of said motion had not been timely served on plaintiff's counsel.

It should also be noted that in assembling the record for appeal, the actual photographs admitted into evidence at the trial could not be located by the parties. By stipulation of the parties, photographs were substituted and filed with the record.

## I.

In *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 145 N.E.2d 105, our supreme court set forth some principles which we find controlling in this case.

■■ We commence with the fundamental proposition "* * * that the law does not exact of a municipality the duty of keeping all sidewalks in perfect condition at all times, and that slight inequalities in level, or other minor defects frequently found in traversed areas, are not actionable. *Storen v. City of Chicago*, 373 Ill. 530; 19 McQuillin, Municipal Corporations, 3d ed., sec. 54.80." 11 Ill. 2d 601, 604.

■■ We next consider whether the sidewalk defect in this case presents a question of law for the court to decide, or one of fact for the jury. The supreme court said:

> "The rule in Illinois, reiterated in the case law, is that a jury question on the issue of the city's negligence is presented only when the defect in the sidewalk is such that a reasonably prudent man should anticipate some danger to persons walking upon it. [Citations.]" 11 Ill. 2d 601, 605.

In *Davis v. City of Chicago* (1st Dist. 1972), 8 Ill. App. 3d 94, 289 N.E.2d 250, this court considered a set of facts which involved a slope in a sidewalk of up to 5.7°, on which was recently fallen snow. We said in *Davis* that, "The test to be applied in determining the City's negligence, * * * is whether a reasonably prudent man would anticipate some danger to persons walking upon the sidewalk, and take action to avoid it." (8 Ill. App. 3d 94, 97.) In *Davis* a general verdict for $25,000 was returned against the City. The jury answered two special interrogatories finding that the City's negligent maintenance of the sidewalk proximately caused the injury and that plaintiff was not contributorily negligent. This court, in reversing the judgment, held that the overwhelming weight of the evidence demonstrated that the fall was caused not by the slope of the sidewalk, but rather by the snow and ice conditions for which the City was not responsible under the circumstances of the cases; and that the trial court erred in refusing to direct a verdict for the City.

As neither party had discussed the *Arvidson* principles in their briefs, at oral argument we requested supplemental briefs. Plaintiff points out that

the City failed to move for a directed verdict at the end of plaintiff's case or at the end of all the evidence. However, in defendant's post-trial motion, the City prayed that the trial court enter judgment in favor of the City notwithstanding the verdict for a number of reasons, one of which was that the verdict was contrary to the law. Section 68.1 of our Civil Practice Act (Ill. Rev. Stat. 1969, ch. 110, par. 68.1) provides, "Relief after trial may include the entry of judgment if under the evidence in the case it would have been the duty of the court to direct a verdict without submitting the case to the jury, even though no motion for directed verdict was made * * *." The trial court denied defendant's post-trial motion so the correctness of that ruling is properly before us.

Plaintiff's evidence was that she had walked over the sidewalk, where she fell, at least twice a day for the six years she resided on Ridgeway Avenue; that at the time of the accident she was walking southbound; that, although it was snowing and the sidewalks had been shoveled, she followed a footpath from 12″ to 14″ in width located at the east portion of the sidewalk (near a hedge) and the sidewalk was between five and six feet in width; that the snow had covered the spot; and that the higher part of the sidewalk was about two inches higher.

Plaintiff's only other evidence presented in her case in chief concerning the condition of the sidewalk was that the sidewalk was in the same condition on the date of plaintiff's fall, March 26, 1965, as it had been since 1960. Photographs of the sidewalk, without snow or ice, admitted into evidence were not located by the parties in submitting the record to this court. However, the parties agreed to a substitution of certain photographs.

Based on plaintiff's evidence we think that as a matter of law plaintiff failed to establish that the defect in the sidewalk, whether it was "about two inches" as plaintiff testified or 1⅛″ based on the City's evidence, is such that a reasonably prudent person should anticipate some danger to persons walking upon it. This is especially so when consideration is given to the evidence that the sidewalk was covered with snow to such an extent that plaintiff walked on a path on the sidewalk. Looking at the record at the close of all the evidence we think the same condition prevails as in *Davis*. There is nothing in the record to suggest that anyone ever complained to the City about the condition of the sidewalk; in fact, plaintiff, who walked on the sidewalk at least twice a day, made no complaint about the condition of the walk. In fact, the photographs of the sidewalk do not reveal a condition existing which would cause concern for the safety of those using the sidewalk. There is no mathematically precise formula which can be applied in this type of situation. Although plaintiff testified the elevation was about 2″, the City's evidence indicated the elevation by measurement was 1⅛″. This elevation at the extreme east

edge then reduced to zero at the west edge of the six-foot-wide walk. Based upon the record and circumstances of this case, we hold that as a matter of law, plaintiff failed to establish that a reasonably prudent person would anticipate some danger to persons walking upon the sidewalk, and take some action to avoid it.

■■ The trial court was in error in not allowing defendant's post-trial motion to enter judgment in favor of the defendant and against the plaintiff notwithstanding the verdict. Based on our holding, it is not necessary to discuss the other points raised by defendant on this appeal. We, therefore, reverse the judgment of the circuit court of Cook County and remand with directions that judgment be entered in accordance with the views expressed herein.

Judgment reversed and remanded.

STAMOS, P. J., and HAYES, J., concur.