(No. 49195.

MARION C. WARNER, Appellant, v. THE CITY OF CHICAGO, Appellee.

*Opinion filed May 26, 1978.*

KLUCZYNSKI, J., took no part.
WARD, C.J., and RYAN, J., dissenting.

Philip E. Howard, Ltd., of Chicago (William J. Harte, Ltd., of counsel), for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

A Cook County circuit court jury awarded plaintiff $53,996 as damages for injuries suffered in a fall on an allegedly defective city of Chicago sidewalk. The appellate court reversed, finding the defect to be so slight that it was not actionable as a matter of law. (43 Ill. App. 3d 691.) We granted plaintiff leave to appeal.

The injuries occurred March 26, 1965, near plaintiff's residence on Ridgeway Avenue in Chicago. Although it had snowed on the previous day, the sidewalk had been shoveled and only about one-half inch of freshly fallen snow was on the sidewalk at the time of the occurrence. Plaintiff testified that while following a "light path" made by other pedestrians along the edge of the sidewalk, she stubbed her toe on a raised slab, lost her balance and fell. She stated that she did not see this defect as she was walking because it was covered by the snow. She denied slipping on the snow, asserting that tripping over the raised slab was the sole cause of her fall. According to plaintiff's estimate, the slab was raised about 2 inches above the adjoining slab at the point where she stubbed her toe. A city investigator testified that he measured the height to be a maximum of 1 1/8 inches at the point where plaintiff's

toe struck the slab, but this measurement was taken 5½ years after the accident occurred.

In finding for the plaintiff, the jurors answered special interrogatories indicating that they found the city negligent in its maintenance of the sidewalk and that this negligence was the proximate cause of plaintiff's injury. In addition, the jury found that plaintiff had not been contributorially negligent. The city's post-trial motion for judgment notwithstanding the verdict was denied.

The appellate court reversed, stating that, as a matter of law, plaintiff had failed to establish that the defect in the sidewalk would cause a reasonably prudent person to anticipate some danger to pedestrians, a necessary precedent to recovery under the rule of *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601. In *Arvidson*, plaintiff fell and was injured when she caught her heel on a defective slab of sidewalk which was 2 inches higher than the adjoining slab. The municipality maintained that plaintiff had no cause of action on these facts. This court there recognized the numerous and diverse authorities involving the difficult issue of whether height differences between adjoining sidewalk slabs constitute questions of fact for the jury or of law for the court. The court concluded that "[a] survey of the decisions does indicate *** that the law does not exact of a municipality the duty of keeping all sidewalks in perfect condition at all times, and that slight inequalities in level, or other minor defects frequently found in traversed areas, are not actionable. *Storen v. City of Chicago*, 373 Ill. 530; 19 McQuillin, Municipal Corporations, 3d ed., sec. 54.80." (11 Ill. 2d 601, 604.) The court then noted the crucial question in such cases:

> "The rule in Illinois, reiterated in the case law, is that a jury question on the issue of the city's negligence is presented only when the defect in the sidewalk is such that a reasonably

prudent man should anticipate some danger to persons walking upon it. [Citations.]'" (11 Ill. 2d 601, 605.)

The court went on to hold that under the particular facts presented, "it cannot be found that all reasonable minds would agree that the 2-inch variation and the height of the adjoining slabs of the sidewalk near the curb was so slight a defect that no danger to pedestrians could reasonably be foreseen." 11 Ill. 2d 601, 609.

There is no doubt that the observation in *Arvidson* that minor sidewalk defects are not actionable still represents the view of the great majority of jurisdictions. (See Annot., 37 A.L.R.2d 1187 (1954), as supplemented by A.L.R. Later Case Service (1977).) The diversity of opinion arises in determining which defects are "minor," and in resolving that question each case must be examined as to its own particular facts. "[N]o mathematical standard can be adopted in fixing the line of demarcation ***." (*Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 604.) An unacceptable height variation in one location, such as a busy commercial area where pedestrians must be constantly alert to avoid bumping into one another, may be nonactionable in another area, such as a residential one. *Carlin v. City of Chicago* (1914), 262 Ill. 564, 573; *Fischer v. Kansas City* (Mo. App. 1969), 446 S.W.2d 451, 454; *Westler v. City of Milwaukee* (1967), 34 Wis. 2d 272, 276, 149 N.W.2d 624, 625; *City of Beaumont v. Henderson* (Tex. Civ. App. 1961), 349 S.W.2d 301, 304.

Turning to the facts in the case before us, we believe that the city's evidence, a 1 1/8-inch-maximum height variation, would indicate that, in view of the surrounding circumstances, no cause of action would lie due to the minimal nature of the defect. However, the 5½-year delay in obtaining that measurement greatly reduces its probative value, and the jury could reasonably believe that plaintiff's testimony more accurately described the condi-

tion of the sidewalk at the time of the occurrence. In our judgment a reasonably prudent person should anticipate some danger to those walking upon a sidewalk in the condition described by plaintiff. Nor do we believe the jury's finding that plaintiff was exercising due care at the time of the accident was contrary to the manifest weight of the evidence. The defect was not apparent because it was obscured by the snow, and, in our opinion, it was not unreasonable for her to follow the path trod by others even though it traversed the raised slab. Were the defect uncovered and apparent to those upon the sidewalk, however, the question of plaintiff's due care would be less easily resolved, but that is not the factual situation here. (See, *e.g.*, *Rider v. City of Norman* (Okla. 1970), 476 P.2d 312.) We emphasize, too, that our holding should not be construed as diminishing the force of the general rule that a municipality is not liable for minor sidewalk defects. We decide only that in the circumstances of this case the evidence presented a question for the jury.

Defendant contends that the trial court erred in admitting certain photographs of the accident site because they portrayed the sidewalk without snow rather than the actual condition at the time of plaintiff's fall. However, the fact that conditions had changed at the time the photographs were taken does not necessarily render them inadmissible, so long as the jury is not misled. (3 Jones, Evidence sec. 17:53 (6th ed. 1972).) Since it was made clear to the jury that the photographs merely depicted the nature of the defect and not the condition of the surface at the time of the occurrence, they were properly admitted into evidence.

Lastly, defendant contends that plaintiff simply slipped on the snow and fell, and that her testimony was manufactured subsequent to her injury, a suggestion denied by plaintiff. Defendant argued this theory to the jury, and there is nothing in this record to warrant our

entering the province of the jury and rejecting its finding thereon.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decison of this case.

MR. CHIEF JUSTICE WARD, dissenting:

I dissent. The testimony here as to the difference in grade of the sidewalk was conflicting. The plaintiff testified that from her visual observation at the time of the accident the difference was "about 2 inches." A witness for the defendant testified, on the basis of an actual measurement made by him some 5½ years later using a depth gauge, that the differential was 1 1/8 inches. The majority states that the latter figure would constitute such a minimal defect as not to be actionable. The majority states, however, that the jury may have accepted the plaintiff's figure, and that a differential of "about 2 inches" makes the question of liability one for the jury to decide.

The evidence with respect to the difference in grade is in a somewhat unsatisfactory condition. The testimony on behalf of both the plaintiff and the defendant was given with reference to photographs taken by the plaintiff which were placed in evidence. These photographs were taken at some unspecified date between the time of the accident in March 1965 and the trial, which took place in November 1970. When the record was assembled for appeal, it was discovered that these photographs were no longer in the court files, and, by stipulation, other photographs were substituted. The defendant's witness did testify at the trial, however, that the condition of the sidewalk when he measured it was the same as that shown in one of the photographs introduced into evidence by the plaintiff.

The majority's conclusion that a difference in grade of

"about 2 inches" requires that the jury be permitted to decide the question of liability purports to be based on *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601. I do not consider the decision in *Arvidson* to be controlling here. The defective sidewalk there was located next to a business street. It contained parking meters and abutted on stores. The plaintiff was there on an errand, and had no previous knowledge of the condition of the sidewalk. See 11 Ill. 2d 601, 609.

The court in *Arvidson,* in discussing the demarcation between questions for the jury and questions for the court, was at pains to note, "[N]o mathematical standard can be adopted in fixing the line of demarcation, and *** each case must be determined upon its own particular facts and circumstances." (11 Ill. 2d 601, 604.) As the majority here acknowledges, "An unacceptable height variation in one location, such as a busy commercial area where pedestrians must be constantly alert to avoid bumping into one another, may be nonactionable in another area, such as a residential one."

While the majority states that it is not diminishing the general force of the rule announced in *Arvidson* that slight inequalities in grade are not actionable, I believe that this decision nonetheless does so.

In *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 569-70, this court recently reaffirmed the rule announced in *Strappelli v. City of Chicago* (1939), 371 Ill. 72, that a municipality is not liable for failure to remove snow which has accumulated on a street or sidewalk from natural causes. Although liability here was not predicated on a claim that the plaintiff had slipped on the snow, but on a claim that she had stubbed her toe on a raised slab in the pavement, the result here is nevertheless inconsistent with *Lansing* and *Strappelli.*

The majority states that if the assumed 2-inch difference in grade had been visible "the question of

plaintiff's due care would be less easily resolved," but that because the difference was obscured by snow, the jury's finding that the plaintiff was in the exercise of due care was warranted. The place where the plaintiff fell was in a residential neighborhood only a few doors from her home. She testified that she had traversed this distance twice a day over a period of 6 years, and that she had noticed the height differential every time she passed by. Had the defect been visible, I think a judgment *n.o.v.* in favor of the defendant would have been proper. See *Shannon v. Addison Trail High School* (1975), 33 Ill. App. 3d 953; *Davis v. City of Chicago* (1972), 8 Ill. App. 3d 94; Annot., 41 A.L.R.2d 739 (1955).

The implication of the decision is thus that a difference in grade which, if visible, would not lead to liability does so if it is concealed by a snowfall which, under the decision in *Strappelli,* the city had no obligation to remove.

MR. JUSTICE RYAN, also dissenting:

I must respectfully dissent from the opinion of the majority of my colleagues because I feel that under the facts of this case a reasonably prudent man would not anticipate danger to a person using the sidewalk in question under the circumstances present on the date of the accident. Thus, no question of fact was presented for a jury's determination. *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 605.

Although this court in *Arvidson* rejected the practice of fixing arbitrary standards with mathematical precision as to what constitutes minor defects in sidewalks which do not render a city legally responsible, I fear that the effect of the majority opinion is to fix such a line of demarcation at "about 2 inches." The opinion states that the height variation of 1 1/8 inches established by the city's evidence, "would indicate that, in view of the surrounding circum-

stances, no cause of action would lie due to the minimal nature of the defect." The opinion suggests, however, that the jury may have rejected the city's evidence and accepted the plaintiff's version that the variation was "about 2 inches" and states:

"In our judgment a reasonably prudent person should anticipate some danger to those walking upon a sidewalk in the condition described by plaintiff."

Somehow, the magic words concerning height variation in sidewalks necessary to create a question of fact for the jury seem to have been established at "about 2 inches." That was the language the court considered sufficient in *Arvidson* and the same "about 2 inches" has now been accepted by the majority of this court while stating that a 1 1/8-inch variation was not actionable.

I think it is necessary that this court definitely reject the acceptance of any arbitrary measurement as signifying that a question of fact for the jury exists and that we adhere to previous pronouncements that the reasonably-prudent-man test must be applied to the facts and circumstances of a particular case. It is my belief that a height variation of "about 2 inches" of two adjoining slabs of concrete in a sidewalk may well present a question for the jury under the facts of one case such as *Arvidson,* but that, under the facts and circumstances of this case, I feel that the city, as a matter of law, was not negligent in permitting this particular variation of "about 2 inches" to exist.

The majority acknowledges that an unacceptable height variation in one location, such as a busy commercial area, may be nonactionable in another area, such as a residential one. Nonetheless, the majority adheres to the "about 2 inches" criterion accepted by this court in *Arvidson* under facts and circumstances that bear no resemblance to the facts and circumstances in the case now

under consideration.

In *Cogdill v. City of Marion* (1959), 22 Ill. App. 2d 99, 103, *Shepard v. City of Aurora* (1955), 5 Ill. App. 2d 12, 25, and *Bradshaw v. City of East St. Louis* (1954), 3 Ill. App. 2d 300, the appellate courts of this State have recognized that the municipality is only required to maintain its streets and sidewalks in a reasonably safe condition considering the use to be made and the amount and kind of travel which may be fairly expected upon them. In *Welch v. City of Chicago* (1925), 236 Ill. App. 520, 534, *aff'd* (1926), 323 Ill. 498, the court stated:

> "Ordinary care on the part of the City as it pertains to such an area as exists at State and Madison streets *** —one of the busiest corners in the world—may be said to require a closer attention to physical conditions, and a somewhat smoother and safer surface in the street than is required where travel is sparse ***."

This court in *Arvidson,* after acknowledging that slight inequalities in the level of the sidewalk or other minor defects are not actionable, emphasized that the evidence in the case it was considering established that the 2-inch difference in level "was near the curb of a business street, on which there were abutting stores and parking meters, so that it could reasonably be foreseen that the area would be traversed by pedestrians enroute to the stores." (11 Ill. 2d 601, 609.) In fact, the plaintiff in that case had parked her automobile, inserted a coin in the parking meter, and, as she turned and walked toward a store, stepped on the uneven pavement and fell.

The facts in the case we are now considering present a sharply different picture. Here, the defect was located in a residential area. It appears from the testimony and photographs in evidence that the sidewalk was quite wide, plaintiff's evidence indicating it was between 5 and 6 feet wide. The sidewalk runs north and south on the west side

of North Ridgeway Avenue. The photographs show that there is a parkway between the sidewalk and the street and that there is a hedge at least knee high at the edge of the parkway adjacent to the east edge of the sidewalk. The spot where plaintiff fell, as indicated by a mark she made on a photograph, is on the east edge of the sidewalk adjacent to the hedge, which would be a part of the sidewalk that would not customarily be used by pedestrians. The plaintiff was walking in that area on the day she was injured because there was an accumulation of snow on the sidewalk and she was following a path in the snow that had been made by people who had been walking on the sidewalk. The raised part of the sidewalk was covered with snow and the plaintiff did not notice this defect. However, when she stumbled the snow was pushed away from the defect and she noticed that the square to the south of where she had stumbled was about 2 inches higher than the square to the north.

There is another reason which convinces me that as a matter of law, under the facts of this case, the city should not be liable. The plaintiff, herself, by way of explaining the difference between her evidence that the level variation was about 2 inches and the city's evidence that it measured only 1 1/8 inches, has suggested that judicial notice be taken of the fact that changes in temperatures and seasons in Chicago can cause the sidewalks to rise and fall in elevation. The evidence would indicate that the variation in the sidewalk level fluctuates from year to year—a variation of 2 inches one year may be 1 1/8 inches the next year and vice versa. Obviously, a city cannot be expected to maintain all sidewalks perfectly level and free from all defects at all times. I also believe that a city cannot be expected to estimate that a variation in height of 1 1/8 inches, which the majority holds is nonactionable, will be increased to about 2 inches at another time of year.

In *Lance v. Senior* (1967), 36 Ill. 2d 516, this court

held that whether the law imposes a duty on an individual with regard to another does not depend upon foreseeability alone. The likelihood of injury, the burden of guarding against it, and the consequences of placing that burden upon the defendant must all be taken into account.

Through hindsight most events are foreseeable, which, I suggest, accounts for the qualification as that term relates to duty, that the event be *reasonably* foreseeable. In my opinion, the minimal nature of the defect and its location in a residential area on the edge of a sidewalk close to a hedge where a pedestrian would not customarily walk; the fact that plaintiff was using that part of the sidewalk because she was following a path in the snow; and the fact that she could not see the defect because it was covered with snow renders the foreseeability of this event quite remote and causes it to be somewhat less than reasonably foreseeable. Applying the criteria as to duty this court adopted in *Lance,* the likelihood of injury from the city's failure to repair this minor defect is slight. On the other hand, the burden that would be placed on the city to repair all of the minor defects of this nature on the hundreds of miles of sidewalk located in its residential areas would be substantial. Also, the constant surveillance required to estimate the changes climatic conditions may render from one season to another would be next to impossible to perform. For the reasons I have at length stated, I would hold that as a matter of law, under the facts and circumstances of this case, the city of Chicago is not liable.