DANIEL J. RYAN, Plaintiff-Appellee, v. E.A.I. CONSTRUCTION CORPORATION *et al.*, Defendants-Appellants and Third-Party Plaintiffs-Appellants (McNulty Brothers Company *et al.*, Third-Party Defendants-Appellees).

First District (2nd Division) No. 86—0623

Opinion filed July 21, 1987.

452

James P. DeNardo, of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellants.

Michael J. Gallagher, D. Patterson Gloor, James A. Foster, and Judith A. Schieber, all of Cassiday, Schade & Gloor, of Chicago, for appellee McNulty Bros. Company.

Joseph R. Curcio, of Joseph R. Curcio, Ltd., and David A. Novoselsky and Kathleen M. Krist, both of David A. Novoselsky & Associates, both of Chicago, for appellee Daniel J. Ryan.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff Daniel J. Ryan, who suffered injuries while working on a demolition and remodeling project, brought suit against the E.A.I. Construction Corporation (EAI) and La Salle Partners, Inc. (La Salle) under the Structural Work Act (the Act). (Ill. Rev. Stat. 1985, ch. 48, pars. 60 through 69.) EAI brought a third-party action against plain-

tiff's employer, McNulty Bros. Company (McNulty) for contribution and Dr. Arthur Connor (Connor), plaintiff's treating physician, for medical malpractice. The case was tried before a jury on plaintiff's action and the third-party cause of action against McNulty.

The jury returned verdicts in favor of the plaintiff and against EAI and La Salle in the amount of $1,219,659.25, and in favor of EAI on its contribution action against McNulty, finding contribution from McNulty in the amount of 2½% of the amount awarded to plaintiff. EAI's other counts against McNulty were dismissed and the medical malpractice count was severed.

EAI and La Salle's post-trial motions seeking judgment notwithstanding the verdict or, in the alternative, a new trial, were denied and this appeal followed. For the following reasons, we affirm.

This case arose out of an accident that occurred during a remodeling project on a building located at 11 South La Salle Street in Chicago, Illinois. Plaintiff, a construction worker employed by McNulty, was injured when a wall he was working on collapsed. Defendant La Salle is the managing and leasing agent on behalf of the owners of the building, Roanoke Association, Ltd. La Salle hired EAI, the general contractor. EAI hired McNulty as subcontractor to perform the demolition work. Both EAI and La Salle occupied offices on the same floor of that building and both are one of several different corporate entities in a development investment group.

The contract between EAI and McNulty contained a description of the work to be performed and stated that McNulty would furnish "all labor, tools, equipment, materials, scaffolding, supervision, engineering ***, to complete the demolition work."

At the time of the accident, plaintiff was on a scaffold cutting a "chase" or narrow indentation into a clay tile wall located in a staircase between floors. When he had cut the chase across the length of the wall, except for a two-foot section in the middle, the wall collapsed causing heavy debris to fall on him and the scaffold. The falling debris broke through the scaffold causing plaintiff to fall and land with debris falling on top of him. He sustained serious injuries.

At trial, conflicting evidence was presented on three focal issues in the case: the nature of the instructions given by EAI to McNulty regarding the demolition of the walls, the extent of supervision, instruction and control EAI exercised over the work, and the extent of supervision, instruction and control that La Salle had over the entire project.

Don Jenkins, EAI's project superintendent, testified that McNulty was instructed to remove all interior walls and was given an architec-

tural drawing to assist them in the removal. However, McNulty employees testified that the field instructions given by EAI during the project were inconsistent with earlier instructions and with the drawings provided.

McNulty's foreman, Lester Eby, was told by Jenkins to leave the wall up and prepare the stairwell between the 15th and 16th floors for closure by cutting a "chase" into the east wall along its entire length. Eby relayed these instructions to John Bronson, another McNulty employee, who in turn told the plaintiff to do the "chasing."

On the day of the accident, Jenkins and Eby observed plaintiff working and told him to hurry up. Neither made any comments about the manner in which the work was being done.

Plaintiff's expert testified that since the wall was clay and hollow, chasing removed necessary support from the wall. In his opinion, this was an unsafe practice because it created instability in the wall and made collapse of the wall foreseeable.

The evidence on control and supervision on the site was also conflicting. EAI was responsible for coordinating and scheduling work, insuring job safety, approving completed work by the various subcontractors, and had authority to stop work in progress. Safety meetings were conducted regularly. McNulty as subcontractor performed the demolition work under the direction of EAI.

Bruce Peterson, senior vice-president and secretary-treasurer for La Salle, testified that La Salle and another company, Equity Associates, were owned by La Salle Partners Holding Co. EAI is a wholly owned subsidiary of Equity Associates. Mr. Peterson is an officer in all of these entities and all of the companies' offices are located at the building at 11 South La Salle. While La Salle was the manager and leasing agent of the building on behalf of the owners, they had an ownership interest through their lease. The group of companies shared expenses and allocation of these expenses was done by an internal accounting function.

The La Salle "people" attended job meetings that involved all or a majority of the subcontractors working on the building. La Salle admitted hiring EAI and in turn, EAI hired McNulty. The evidence shows that EAI's project superintendent's checks were signed by La Salle.

Dr. Connor, plaintiff's treating physician, testified that the plaintiff suffered a disc herniation as well as injuries to his elbow and knee. Plaintiff chose treatment by chymopapin rather than a spinal fusion operation. This treatment was followed by rehabilitation therapy. Dr. Connor also testified that plaintiff's condition and injuries are per-

manent and possible future medical treatment includes spinal fusion surgery. That surgery has a 50% chance of a good result and, if successful, plaintiff may some day return to light work but can never return to construction work.

Dr. Treister, the examining physician, also testified that plaintiff's disc condition was permanent and if future spinal fusion surgery were performed, it could increase plaintiff's walking and standing tolerance and would provide some relief from pain.

## I

First we will consider the errors assigned in the appeal of defendants EAI and La Salle from the judgment entered in favor of plaintiff.

## A

Initially, plaintiff contends that EAI and La Salle have failed to preserve certain issues on appeal. The record shows that an oral motion for directed verdict was made on behalf of La Salle at the close of plaintiff's case in chief but was not renewed at the close of all of the evidence. EAI never made any motions for directed verdict. However, in defendants' amended post-trial motions, both EAI and La Salle prayed that the trial court enter judgment notwithstanding the verdict for a number of reasons, one of which was that the verdict was contrary to the law.

■ Section 2–1202(b) of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2–1202(b)) provides: "Relief after trial may include the entry of judgment if under the evidence in the case it would have been the duty of the court to direct a verdict without submitting the case to the jury, even though no motion for directed verdict was made ***." The trial court denied defendants' post-trial motions and, therefore, the correctness of that ruling is properly before us. *Warner v. City of Chicago* (1976), 43 Ill. App. 3d 691, 694, 358 N.E.2d 277, 279, *rev'd on other grounds* (1978), 72 Ill. 2d 100, 378 N.E.2d 502.

## B

EAI and La Salle maintain that judgment notwithstanding the verdict should have been granted in their favor because: (1) there was no evidence that La Salle was "in charge of" the work; and (2) the evidence fails to show a wilful violation of the Act.

■ Well-established rules govern Structural Work Act cases. The Act is designed to protect workers engaged in extrahazardous activities from certain risks inherent in the nature of their jobs. (*Urman v.*

*Walter* (1981), 101 Ill. App. 3d 1085, 1090, 428 N.E.2d 1051, *appeal denied* (1982), 91 Ill. 2d 557.) Although the Act should be liberally construed, it is not intended to cover all injuries that may occur on or near a construction site. 101 Ill. App. 3d 1085, 1090, 428 N.E.2d 1051.

■ The elements of a cause of action under the Act are: (1) the device involved must be included in the Act; (2) the device involved must be used in the construction of a building or "other structure" within the Act; (3) the device must be unsafe, *or not safely placed* or operated; (4) defendants (those who are "in charge of" the work) must have "wilfully violated the Act"; and (5) plaintiff's injury must be proximately caused by defendants' violation. (Emphasis added.) 101 Ill. App. 3d 1085, 1090, 428 N.E.2d 1051.

■ The first issue is whether La Salle was "in charge of" the work under the Act. Since La Salle contends that judgment notwithstanding the verdict should have been entered in their favor, we must view the evidence in a light most favorable to the plaintiff and unless that evidence overwhelmingly favors a finding that La Salle was not "in charge of" the work and no contrary verdict based on that evidence could ever stand, we must not disturb the jury's verdict. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

Civil liability under the Act attaches to those parties having charge of the work. (Ill. Rev. Stat. 1985, ch. 48, par. 69.) This statutory language is not confined to the exercise of supervision and control over the work but is a generic term which is liberally construed to effectively include two classes of potential defendants: (1) those having the right to supervise and control the actual work from which the injury arises; and (2) those with overall responsibility for the work being performed on the jobsite. *Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 477, 478 N.E.2d 1057.

■ The determination of whether a party is in charge of the work depends upon an evaluation of the totality of the circumstances. Various factors probative of "having charge of" the work are often enumerated by courts and do not require a lengthy discussion in this case. See, *e.g., Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 479-80, 478 N.E.2d 1057.

Liability is extended to those having some responsibility and opportunity to prevent dangerous work methods at the construction site in general without regard to their having a direct supervisory connection with the particular task which gives rise to the injury. (*Hausam v. Victor Gruen & Associates* (1980), 86 Ill. App. 3d 1145, 1149, 408

N.E.2d 1051, *appeal denied* (1980), 81 Ill. 2d 602.) Moreover, whether a party had charge of the work is a question of fact for the jury to determine.

■ Viewing the evidence in a light most favorable to the plaintiff as we must, and under the totality of the surrounding circumstances, we conclude that there was sufficient evidence concerning the nature of La Salle's relationship to the rehabilitation project to support the jury's finding that La Salle was "in charge of" the work within the meaning of the Act.

■ Next, EAI and La Salle argue that judgment notwithstanding the verdict should have been granted in their favor because the evidence does not show a wilful violation of the Act as: (1) the scaffold itself was not defective; (2) there was no violation of any safety standard; and (3) plaintiff's own conduct was the sole proximate cause of his injuries, *i.e.*, plaintiff positioned the scaffold. We find their arguments unpersuasive.

It is uncontested that the scaffold itself was not defective. Under the Act, the scaffold must not only be erected and constructed safely, *it must also be placed and operated to give proper and adequate protection.* (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 48, par. 60.) This issue is also a question of fact for the jury to decide. *Ewert v. Wieboldt Stores, Inc.* (1980), 84 Ill. App. 3d 1008, 405 N.E.2d 1283, *appeal denied* (1980), 81 Ill. 2d 591.

■ By its terms, section 1 of the Act provides that all "scaffolds *** used in constructing or maintaining buildings *** should be erected, placed and operated *** to protect persons employed or engaged thereon *** and in such manner as to prevent the falling of any material that may be used or deposited thereon." (*Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1091, 428 N.E.2d 1051, *appeal denied* (1982), 91 Ill. 2d 557.) The persons protected under the Act are protected from the falling of "any material" that may be used or deposited on the device. *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1091, 428 N.E.2d 1051, *appeal denied* (1982), 91 Ill. 2d 557.

Defendants' reliance on *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, 414 N.E.2d 147, in support of their arguments is misplaced. It has been held that *Matthews'* narrow construction of the Act is not supported by any case authority and runs contrary to the express language of the Act. *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, 1129, 441 N.E.2d 889; *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 1093-94, 428 N.E.2d 1051, *appeal denied* (1982), 91 Ill. 2d 557; see *Navlyt v. Kalinich* (1972), 53 Ill. 2d 137, 290 N.E.2d 219 (where the supreme court

held that the Act covered injuries where a worker who was installing sewer tile in a trench was killed when the walls of the trench collapsed on him).

In the case *sub judice*, the evidence undeniably demonstrates that the plaintiff falls within the class of person intended to be protected by the Act and that the scaffold, while itself not defective, falls within the scope of the Act. Therefore, the evidence was sufficient to support the jury's verdict.

Next, defendants contend that the only breach of a safety standard was committed by McNulty. This argument misses the point. It is only necessary that a defendant know or, in the exercise of reasonable care, should have known of the existence of a dangerous condition in order to demonstrate a wilful violation of the Act. (*Kohutko v. Four Columns, Ltd.* (1986), 148 Ill. App. 3d 181, 187, 498 N.E.2d 522.) The evidence shows that both EAI and La Salle employees were present while plaintiff was performing his work. EAI, in charge of the construction as the general contractor, may not escape liability by closing its eyes to the defect at the time of the accident if the evidence shows that ordinary care in inspection would have uncovered the defect. (*Katz v. Shaf Home Builders, Inc.* (1981), 94 Ill. App. 3d 526, 529, 418 N.E.2d 822.) The evidence in this case was conflicting as to who gave the direct order to perform the work in the manner in which plaintiff proceeded. However, the question of who gave the order is not outcome determinative. Rather, a wilful violation of the Act is a question of fact for the jury and the evidence was sufficient to enable the jury to conclude that there was indeed a wilful violation of the Act.

Next, defendants maintain that plaintiff's actions were the sole proximate cause of his injuries because he positioned the scaffold and it was his cutting into the mortar at the bottom of the wall that caused the wall to collapse.

The question of proximate cause under the Act is a question of law only when facts are not disputed and where there can be no difference in the judgment of reasonable men. (*Kochan v. Commonwealth Edison Co.* (1984), 123 Ill. App. 3d 844, 848, 463 N.E.2d 921, *appeal denied* (1984), 101 Ill. 2d 566.) Comparative negligence is not applied in actions brought under the Act. The only inquiry is an assessment of the defendants' culpability and not the plaintiff's conduct. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 410, 485 N.E.2d 4; *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 459-60, 473 N.E.2d 946.) In this case, the question of proximate cause was a question of fact for the jury. After hearing the evidence the

jury found that defendants' statutory violation was a proximate cause of plaintiff's injury and therefore their finding of liability under the Act was appropriate.

Defendants' motions for judgment notwithstanding the verdict and for a new trial were properly denied.

## C

■■ Next, defendants contend that a series of evidentiary and instruction errors, individually or cumulatively, resulted in the denial of a fair trial.

The first evidence complained of involves production of documents. The record shows that in reliance on *LeMaster v. Chicago Rock Island Pacific R.R. Co.* (1976), 35 Ill. App. 3d 1001, 343 N.E.2d 65, *appeal denied* (1976), 63 Ill. 2d 552, the plaintiff sought and the trial court permitted evidence of defendants' untimely production of certain relevant documents. Defendants now contend that the sole purpose and effect of this evidence put them in an unfavorable light in the jury's eyes. We find that this evidence was properly admitted.

In *LeMaster*, the court held:

"Although an inadequate disclosure may not be as serious as a complete nondisclosure by a concealing party, there may be instances wherein a trial court may properly allow evidence of an inadequate disclosure to be presented to the jury. The admission of such evidence is within the sound discretion of the trial court." (35 Ill. App. 3d 1001, 1012, 343 N.E.2d 65.)

The record shows that plaintiff made several pretrial requests for production, without objection by defendants. Nonetheless, five boxes of documents pertaining to relevant drawings for the rehabilitation work were produced by defendants at 8:50 a.m. on the first day of trial. Plaintiff's counsel advised the court and defendants of his intentions regarding this evidence prior to the witness' being sworn. The court reserved its ruling until the line of questioning began. At first, defendants failed to object to the testimony. Subsequently, defendants objected generally as to relevancy and did not move to strike or instruct the jury to disregard the testimony until the following day. Defendants cannot now claim error. Their attempts to distinguish *LeMasters* are unpersuasive.

The admission of facts of nondisclosure or late disclosure are governed by ordinary common law principles of evidence and are therefore within the discretion of the trial court. (*Carter v. Chicago & Illinois Midland Ry. Co.*) (1985), 130 Ill. App. 3d 431, 434, 474 N.E.2d 458, *appeal denied* (1985), 106 Ill. 2d 553.) In the case at bar, the

defendants have failed to demonstrate any prejudice. Therefore the admission of the evidence was not an abuse of discretion.

■■■ Defendants assert that the trial court erred in allowing certain testimony of plaintiff's expert. Mr. Gordon testified that industry standards for cutting into a clay wall are incorporated by reference into the Chicago Building Code. Defendants maintain that Mr. Gordon was not qualified to testify whether the standards were incorporated by reference and even if so qualified, his testimony was an impermissible statutory interpretation.

The record shows however that Mr. Gordon did not interpret the code. He merely testified that the industry-wide code was incorporated by reference into those portions of the Chicago Building Code which refer to the type of work at issue. The court took judicial notice of the code after plaintiff tendered a certified copy to the court.

Illinois favors the permissive use of expert testimony in all types of cases where the jury would be aided in its understanding of the facts. (*Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 482, 478 N.E.2d 1051.) In *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, *cert. denied* (1981), 454 U.S. 836, 70 L. Ed. 2d 117, 102 S. Ct. 140, our supreme court adopted Federal Rule of Evidence 703, which expressly permits an expert witness to give his opinion on the basis of facts not in evidence so long as those facts are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.[1] *Johnson v. Commonwealth Edison Co.* (1985), 133 Ill. App. 3d 472, 483, 478 N.E.2d 1051.

■■■ Moreover, in Illinois, a contractor, builder or other qualified person may give expert opinion testimony on subjects in the field of construction or matters which relate to the construction, installation, maintenance, use, or repair of structures, buildings and the like. Expert testimony in this field covers such things as proper mode of doing construction work, conformity with plans and specifications, adequacy of safeguards and many others. See S. Gard, Illinois Evidence Manual R. 7:18 and Comments, at 295-96 (2d ed. 1979).

Therefore, following the policy of Federal Evidence Rule 703, this testimony was a proper comment on literature and materials available in the field of expertise that the witness was qualified under. The por-

---

[1]Rule 703 reads in full:
"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence." Fed. R. Evid. 703.

tion of the expert's testimony at issue was minimal, the court took judicial notice of the document which established its reliability, and defendants had every opportunity to cross-examine the witness.

■■ Defendants also claim error because the trial court excluded testimony by the plaintiff or his expert regarding plaintiff's positioning of the scaffold. Defendants submit that such evidence was relevant to plaintiff's conduct being the sole proximate cause of the injury and that they were prejudiced by its exclusion. This evidence was properly excluded as the only inquiry to be made is an assessment of the defendants' culpability and not the plaintiff's conduct. *Simmons v. Union Electric Co.* (1984), 104 Ill. 2d 444, 473 N.E.2d 946.

■■ Defendants argue that the court erroneously permitted references to insurance by the plaintiff. The record shows that plaintiff referred to the workers' compensation insurer twice in his direct testimony when he stated that "the nurse from Aetna told him about a doctor who could perform chymopapin treatment," and again when he said that the rehabilitation nurse from Aetna explained his rehabilitation program to him. The references were inadvertent and the court admonished the plaintiff not to mention it again. A reference to insurance during trial is not *per se* reversible. (*Joynt v. Barnes* (1979), 71 Ill. App. 3d 187, 198, 388 N.E.2d 1298, *appeal denied* (1979), 79 Ill. 2d 611.) Since defendants fail to demonstrate any prejudice, there was no error.

■■ Next, defendants contend that the trial court erroneously submitted Illinois Pattern Jury Instructions, Civil, Instruction No. 5.01 (2d ed. 1971). This is the "missing witness" instruction which permits the jury to infer that the testimony of a witness which a party failed to call would be adverse to the party when the witness was under the control of the party, not equally available to the other party, and no reasonable excuse for the failure to call the witness has been shown. The witness referred to was a mechanical engineer employed by and listed by defendants as their expert and deposed twice. Defendants had previously obtained a continuance of the trial to enable this witness to testify.

The record also indicates that when the court inquired about the witness' whereabouts and whether he was in fact ever even notified to appear at the trial, defense counsel's responses were evasive. Defendants now maintain that there is no foundation in the record to support this instruction.

The court determined that in all likelihood, defendants would have produced the witness unless his testimony was in fact unfavorable and therefore the proper foundation was present. (*Tonarelli v. Gibbons*

(1984), 121 Ill. App. 3d 1042, 1047, 460 N.E.2d 464, *appeal denied* (1984), 101 Ill. 2d 551.) The trial court did not abuse its discretion in submitting this instruction. *Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 776, 484 N.E.2d 1237.

## D

■ Defendants next argue that the jury's verdict was improper because there was no evidentiary basis for an award for future lost earnings and, therefore, the jury engaged in conjecture and surmise resulting in an excessive verdict. The question of damages is one of fact for the jury and courts of review will not interfere with the jury's assessment of damages unless: (1) the award is palpably inadequate or a proved element of damages has been ignored; (2) the amount of the verdict is shown to be erroneous or the result of passion or prejudice; or (3) it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relationship to the loss suffered by the plaintiff. *Greco v. Coleman* (1985), 138 Ill. App. 3d 317, 322, 485 N.E.2d 1118, *appeal denied* (1986), 111 Ill. 2d 581.

A review of the record reveals nothing to indicate that the jury award was based on anything other than the evidence. The evidence shows that plaintiff was 24 years old at the time of trial. He suffered a disc herniation as well as other serious injuries which are permanent in nature. Future medical care includes the possibility of spinal fusion surgery with a 50% chance of a good result. Even if that surgery is successful, plaintiff may only be able to return to light work but can never return to construction work. Dr. Connor testified that the plaintiff's functional disability would hinder him for the rest of his life. In addition to the cash value of earnings reasonably certain to be lost in the future, evidence was presented on other elements of damages.

■ Based on the record before us, we conclude that the jury was properly instructed and the verdict falls within the necessarily flexible limits of fair and reasonable compensation. The verdict is not so large as to shock the judicial conscience. Considering the evidence showing the severity of plaintiff's injuries and the deference properly accorded to the discretion of the jury, the amount is within the limits of fair and reasonable compensation. *Ciborowski v. Philip Dressler & Associates* (1982), 110 Ill. App. 3d 981, 987, 443 N.E.2d 618, *appeal denied* (1983), 93 Ill. 2d 541.

## II

We now consider the errors assigned by EAI, third-party plaintiff,

from the judgment requiring McNulty, third-party defendant, to contribute 2½% of the amount of damages awarded to plaintiff.

## A

■■■ EAI argues that the trial court erroneously dismissed counts I and III of their amended third-party complaint because both counts stated valid causes of action for indemnity.

In count I of the amended third-party complaint, EAI sought judgment against McNulty "equal to any judgment awarded plaintiff in the case against EAI" for breach of contract. EAI now argues that this count does not seek indemnification. We disagree.

Dismissal of count I was proper for two reasons. First, the complaint failed to allege consequential damages suffered as a result of McNulty's alleged breach of contract. (See *Sherman v. Village of Williamsville* (1982), 106 Ill. App. 3d 174, 181, 435 N.E.2d 548, *appeal denied* (1982), 91 Ill. 2d 581.) Second, where a breach of contract is alleged and the recovery sought is reimbursement for damages assessed, the claim is essentially one of contractual indemnity and is barred under section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1985, ch. 29, par. 61). *Ludgin v. John Hancock Mutual Life Insurance Co.* (1986), 145 Ill. App. 3d 703, 711, 495 N.E.2d 1237, *appeal denied* (1986), 113 Ill. 2d 560.

The statute voids as against public policy any contract or agreement to indemnify another person from that person's own negligence. (Ill. Rev. Stat. 1985, ch. 29, par. 61.) Count I was therefore properly dismissed.

Count III, seeking recovery under express contractual indemnity, was also properly dismissed. EAI argues that this indemnity agreement does not violate the statute because the agreement specifically states that it does not call for indemnification of EAI for its own negligence and EAI is only "technically" liable under the Act as McNulty is the active tortfeasor. We disagree.

■■■ A similar argument was unsuccessful in *Cox v. Lumbermens Mutual Casualty Co.* (1982), 108 Ill. App. 3d 643, 439 N.E.2d 126, *appeal denied* (1982), 92 Ill. 2d 567, where an owner attempted to avoid the prohibition of the statute arguing that the contract was not void because of a technical violation of the Act. (108 Ill. App. 3d 643, 439 N.E.2d 126.) In any construction case, if a party is found to be liable to the plaintiff under either a negligence theory or under the Structural Work Act, there has necessarily been a determination of that party's culpability. In the case of the Act, a verdict against a defendant necessitates a finding that the defendant "wilfully violated" the

statute, even if the defendant is only passively or technically negligent. If contractual indemnity provisions were enforced in that context, the result would enable a defendant to seek indemnity for his wilful violation of the Act. That result is contrary to the statute. (108 Ill. App. 3d 643, 647, 439 N.E.2d 126; Ill. Rev. Stat. 1985, ch. 29, par. 61.) Moreover, in the case at bar, the jury returned a verdict in favor of EAI on its contribution action against McNulty. The jury's assessment of the degree of McNulty's culpability at 2½% supports the conclusion that EAI's wilful violation of the Act was not merely technical.

## B

■ Next, EAI contends that the court's issue instruction submitted by McNulty improperly framed the issues on the third-party action by failing to set forth some of EAI's theories of recovery against McNulty. The instruction submitted by EAI was properly refused by the court as duplicative and unsupported by the evidence.

## C

■■ ■ EAI contends that the verdict in its favor and against McNulty for 2½% of the amount awarded to the plaintiff is against the manifest weight of the evidence. It further contends that the verdict on its contribution action should have been for 99% of plaintiff's award. EAI therefore seeks judgment notwithstanding the verdict for 99% or, in the alternative, a new trial.

A jury verdict should not be set aside merely because the jury could have drawn different inferences and conclusions from conflicting testimony. (*Turner v. Chicago Transit Authority* (1984), 122 Ill. App. 3d 419, 425, 461 N.E.2d 551.) Unless a conclusion opposite that reached by the jury is clearly evident or the jury's verdict is palpably erroneous, the verdict will not be found to be against the manifest weight of the evidence. It is the sole province of the jury to determine the credibility of witnesses, the weight to be given the evidence, and resolve controverted issues of fact. The evidence was sufficient to support the verdict and in the absence of a showing that the verdict was the result of any passion or prejudice, we will not disturb the verdict on appeal.

## III

■ Lastly, defendants contend that the severance of the medical malpractice count was an abuse of discretion. We disagree. The trial court possesses broad discretionary powers to sever separate claims,

separate defenses or separate parties. (Ill. Rev. Stat. 1985, ch. 110, pars. 2—406, 2—608, 2—614, 2—1006; *Rogala v. Silva* (1973), 16 Ill. App. 3d 63, 305 N.E.2d 571.) Considering the complex nature of the issues involved, the number of witnesses, parties and claims, we conclude that severance of the medical malpractice claim was not an abuse of discretion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO, P.J., and STAMOS, J., concur.