Bruce FULTON, Plaintiff,

v.

UNITED STATES of America,
Defendant.

UNITED STATES of America,
Third–Party Plaintiff,

v.

DUNBAR & SULLIVAN DREDGING
COMPANY, Third–Party
Defendant.

No. 89 C 4297.

United States District Court,
N.D. Illinois, E.D.

Sept. 17, 1991.

Roger N. Gold, I. Peter Polansky, Gold & Polansky, Chicago, Ill., for Bruce Fulton.

Sharon J. Coleman, U.S. Atty's Office, Chicago, Ill., for U.S.

C. Thomas Hendrix, Jr., Patrick Bernard Cage, French, Kezelis & Kominiarek, P.C., John William Bell, John L. Malevitis, Johnson & Bell, Ltd., Chicago, Ill., for Dunbar and Sullivan Dredging Co.

## ORDER

NORGLE, District Judge.

Before the court is the defendant United States' motion for summary judgment. For the following reasons, the motion is granted.

## FACTS

The plaintiff, Bruce Fulton ("Fulton"), was injured on January 28, 1987, while working as a laborer on a rehabilitation project at the Brandon Road Lock and Dam on the Illinois Waterway in Joliet, Illinois. Fulton was employed by the prime contractor on the project, Dunbar and Sullivan Dredging Company ("Dunbar and Sullivan"), which itself had been hired by the United States Army Corps of Engineers ("Corps of Engineers"). The injury occurred when Fulton and a co-worker were directed by their foreman to move railroad ties across a trench, two to three feet deep and from four to seven feet wide,[1] that ran along the base of the dam. The area at which Fulton was working was inaccessible to a crane, and there were no planks crossing the trench. Fulton, while holding one end of a tie, allegedly slipped on an icy rock, fell, and twisted a knee. A co-worker, who was helping Fulton carry the tie, then allegedly dropped the other end of the tie on Fulton's chest. Despite the mishap, Fulton was soon able to stand up and report the matter to the safety officer on the project.

The safety officer, Chad Keillor, who also served as field engineer, was employed by Dunbar and Sullivan. Keillor was responsible for making reports of accidents and safety violations, and for conducting weekly safety meetings. He had an office on the construction site. A safety meeting which Fulton attended on January 12, 1987 included warnings about icy areas.

Fulton was not generally aware of the presence of Corps of Engineers officials on the construction site. He did not see any Corps officials on the day of the accident, nor did he ever speak to any Corps officials regarding the accident.

Michael Edwards served as the Corps of Engineers civil engineer on the Brandon Road project, as representative of the primary contracting officer, and as construction inspector during January 1987. He visited the construction site on average three or four times a week, for two to four hours, to ensure compliance with the contract specifications. Edwards observed safety conditions on site, reported safety violations he discovered to the contractor, and made follow-up inspections. About 20 percent of Edwards' time was spent inspecting the Brandon Road site.

Several provisions of Dunbar and Sullivan's contract with the government are relevant to the dispute. Clause 47 made Dunbar and Sullivan responsible for supervising its employees; Corps of Engineers personnel could not directly supervise any Dunbar employees. Clause 54 made Dunbar and Sullivan responsible for the safety of its employees, including the provision of safety devices. Clause 60 required Edwards to observe Dunbar and Sullivan's inspections and tests for contract compliance and to ensure that the contractor had an adequate quality control system. Dunbar and Sullivan, however, remained responsible for providing its own quality control system.

Fulton filed a one-count complaint on May 25, 1989, alleging that the United States violated the Illinois Structural Work Act, Ill.Rev.Stat. ch. 48, ¶¶ 60–69 (1987), as applicable to the government under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). The complaint asserted that Fulton was injured as a result of the government's failure to provide a safe workplace, failure to provide planking or

---

1. The government contends that the trench was no more than two feet deep and four feet wide. The dispute over the size of the trench, however, is not material to the court's ultimate finding on this motion.

another suitable form of support across the trench which Fulton had been required to cross with the railroad tie, and failure to provide a crane or other device to carry the railroad ties across the trench.

## DISCUSSION

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Nevertheless, in determining the existence of any genuine issues of material fact, the court must draw all reasonable inferences in the light most favorable to the nonmovant. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

The government maintains that Fulton cannot prove any of the essential elements of an action under the Illinois Structural Work Act, and that even if Fulton could establish a claim under that statute, the United States is immune from liability under the discretionary function and independent contractor exceptions in the Federal Tort Claims Act, 28 U.S.C. §§ 2671, 2680(a).

■ Fulton must prove, to establish a prima facie case under the Structural Work Act, that (1) a scaffold or other supporting device covered by the Act was involved, (2) the device was used in the construction of a structure, (3) the device was unsafe in design, placement or operation, (4) a defendant (who was "in charge of" the work) willfully violated the Act, and (5) that Fulton's injury was proximately caused by the defendant's violation. *Ryan v. E.A.I. Constr. Corp.,* 158 Ill.App.3d 449, 457, 110 Ill.Dec. 924, 929, 511 N.E.2d 1244, 1249 (1st Dist.1987); *see also Savic v. United States,* 918 F.2d 696, 699 (7th Cir.1990) (citing *Fisher v. Crippen,* 144 Ill.App.3d 239, 98 Ill.Dec. 183, 185, 493 N.E.2d 1204, 1206 (5th Dist.1986)).

■ A defendant may be deemed to have been "in charge of the work," as specifically required to impose liability under the Act, Ill.Rev.Stat. ch. 48, ¶ 69 (1987), if, liberally construed, he either had the right to supervise and control the work, or had "overall responsibility" for the work. *Ryan,* 158 Ill.App.3d at 457, 110 Ill.Dec. at 929, 511 N.E.2d at 1249. The issue is whether, based on the "totality of the circumstances," the defendant had "some responsibility and opportunity to prevent dangerous work methods at the construction site in general" regardless of whether the defendant directly supervised the specific activity during which the injury occurred. *Id.* Factors to consider in this regard are (1) supervision and control, (2) retention of the right to supervise and control, (3) constant worksite participation, (4) supervision and coordination of subcontractors, (5) responsibility for job site safety precautions, (6) authority to issue change orders, (7) authority to stop the work, (8) ownership of equipment used in the work, (9) knowledge of construction practices, and (10) opportunity to assure safety or to correct equipment problems or improper work practices. *Savic,* 918 F.2d at 700 (citing *Chance v. City of Collinsville,* 112 Ill.App.3d 6, 67 Ill.Dec. 747, 750, 445 N.E.2d 39, 42 (5th Dist.1983)); *Gentile v. Kehe,* 165 Ill.App.3d 802, 805–06, 117 Ill.Dec. 476, 478, 520 N.E.2d 827, 829 (1st Dist.1987), *appeal denied,* 121 Ill.2d 569, 122 Ill.Dec. 437, 526 N.E.2d 830 (1988).

The court finds, after applying these factors to the uncontroverted facts in the record, that the Corps of Engineers, and therefore the government, was not "in charge of" the construction work that resulted in Fulton's injury. The Corps's representative on the Brandon Road project, Edwards, had limited authority to supervise or control the activities of Dunbar and Sullivan employees at the job site. The Corps retained only the right to control compliance with the contract specifications; it could not control the means of compliance. Supervision by the Corps was occasional rather than constant; roughly 80 percent of Edwards' time was spent on other projects at other sites. There was not "constant participation" by the Corps at the site. Safety precautions were clearly the responsibility of Dunbar and Sullivan, not the Corps of Engineers, based on both the contract language and the understanding of Dunbar's safety officer, Keillor. The government did not own the equipment used at the job site by Dunbar & Sullivan. Finally, there is no indication in the record that Edwards, or any other Corps of Engineers officials, knew of the icy rock or ground condition where Fulton was carrying the railroad ties, or had authority to direct corrective measures. The government, however, concedes that it had the right to stop the work and issue change orders. It also appears that the Corps had knowledge of the construction practices in use at the site. Therefore, of the ten "in control" factors listed above, seven indicate that the Corps of Engineers lacked such control, while only three factors indicate the opposite. The number of factors on each side is not dispositive; rather it is the "totality" of the factors when viewed together. Most important is the lack of government control or supervision over, or even awareness of, the specific activity that resulted in Fulton's injury. The government had no real opportunity to correct the allegedly dangerous activity and therefore cannot reasonably be held responsible for it.

The circumstances of this case are similar to those in *Savic*, 918 F.2d 696, in which the government was cleared of liability under the Illinois Structural Work Act for a laborer's fall from a ladder while he was working on a roof repair project at the Great Lakes Naval Training Station. *Savic*, like this case, involved a government contract that placed the contractor in control of the work, including safety precautions. The level of government supervision in this case appears to have been somewhat less than that which was found insufficient in *Savic*. In that case, government inspectors visited the worksite several times each work day. *Savic*, 918 F.2d at 703. Here, the Corps of Engineers' representative visited the site three or four times weekly.

Therefore, the uncontroverted facts establish that the Corps of Engineers, the relevant government agency, was not "in charge of" the Brandon Road Lock and Dam rehabilitation project for purposes of the Illinois Structural Work Act, and as a result, the government is entitled to summary judgment on the plaintiff's claim under that act. In view of that finding, the court deems it unnecessary to address the government's other arguments.

CONCLUSION

For the reasons stated above, the United States' motion for summary judgment is granted.

IT IS SO ORDERED.