Ronald D. PAYNE, Plaintiff–Appellant,

v.

VILLAGE OF ELWOOD, and Illinois municipal corporation, and United States Coating Engineers, an Illinois corporation, Defendants–Appellees.

No. 91–1266.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 31, 1991.

Decided March 23, 1992.

John M. McGarry, Mark L. Karasik, Baker & McKenzie, Stewart Stoller, John J. Heneley (argued), Chicago, Ill., for plaintiff-appellant.

Francis Spina (argued), David E. Trainor, Tressler, Soderstrom, Maloney & Priess, Charles E. Adler, Adler & Adler, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and WISDOM, Senior Circuit Judge.[1]

WISDOM, Senior Circuit Judge.

In this case we must decide whether a mayor's interest in an ongoing civic construction project was sufficient to make his municipality liable for damages suffered by one of the construction workers. On the facts of this case, the district court found that the mayor's level of involvement was insufficient to create liability under either the Illinois Structural Work Act or common law negligence for an injury suffered by an employee of the independent contractor. The district court granted summary judgment in favor of the Village of Elwood, and dismissed the plaintiff's claims against the Village. After a review of the record, we affirm.

## BACKGROUND

In December 1987, the plaintiff-appellant, Mr. Ronald Payne, was employed as a welder by United States Consolidated Enterprises ("Consolidated"). He was assisting in the erection of a water tower for the Village of Elwood. Mr. Payne was injured when a piece of the tower, which was being raised by a crane, struck him on the head and right arm, causing disabling injuries.

Mr. Payne filed suit against the owner of the crane, Consolidated, and the Village of Elwood. The claims against the Village of Elwood arise under the Illinois Structural Work Act[2] and under common law negligence. The Village of Elwood filed a motion for summary judgment and the district court referred the motion to a magistrate. The magistrate recommended that the motion be granted. The district court adopted the magistrate's recommendations and granted the motion for summary judgment. The district court then entered final judgment pursuant to Fed.R.Civ.P. 54(b). This appeal followed.

---

1. The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

2. Ill.Rev.Stat., Ch. 48, § 60 *et seq.*

## DISCUSSION

Mr. Payne raises two basic objections to the district court's grant of summary judgment. First, Mr. Payne contends that the district court (and the magistrate) erred by weighing the credibility of the witnesses as a basis for granting summary judgment. Second, Mr. Payne contends that there are genuine issues of material fact with respect to both the Structural Work Act claim and the common law negligence claim.

"In examining the district court's grant of summary judgment, our duty is to review *de novo* the record and the controlling law." [3] Because this Court must review the record *de novo* we need not consider whether the district court and the magistrate made credibility determinations.

### A. *The Structural Work Act Claim.*

■ The Illinois Structural Work Act regulates the use of scaffolds, hoists, cranes, and other mechanical contrivances used in construction projects. The Act provides a right of action for persons injured by a violation of its provisions. Liability under the Act, however, requires proof that the defendant was "in charge of" the work. The district court granted summary judgment because it found that the Village of Elwood was not in charge of the construction of the water tower as a matter of law.

In *Chance v. City of Collinsville,*[4] the court used a totality of the circumstances test to determine whether the defendant was in charge of the work for purposes of the Act. The court also set forth several factors to be considered in making this determination:

1. supervision and control of the work;

2. retention of the right to supervise and control the work;

3. constant participation in ongoing activities at the construction site;

4. supervision and coordination of subcontractors;

5. responsibility for taking safety precautions at the job site;

6. authority to issue change orders;

7. the right to stop the work;

8. ownership of the equipment used at the job site;

9. the defendant's familiarity with construction customs and practice; and

10. whether the defendant was in a position to assure worker safety or alleviate equipment deficiencies or improper work habits.[5]

Mr. Payne asserts that the evidence shows that several of these factors were met. We have thoroughly reviewed the record and conclude that all of the evidentiary points advanced by the plaintiff are either unsupported by any evidence, based on inadmissible hearsay, or could not justify an inference that the defendant had charge of the work.[6]

For example, it is true that the Mayor of the Village of Elwood, Mr. Archer, had been a structural steel worker and was generally familiar with good welding practices. It is true that Mr. Archer was on the job site almost every day, occasionally talked with the workmen, and even helped them start their equipment on a few mornings. It is also true that, as the Mayor of the Village of Elwood, Mr. Archer had the general right to withhold payment if not satisfied with the work.

When taken in context, however, none of these facts could justify an inference that the Village of Elwood had charge of the project. Mr. Archer was on the site almost

---

**3.** *PPG Industries, Inc. v. Russell,* 887 F.2d 820, 823 (7th Cir.1989).

**4.** 112 Ill.App.3d 6, 67 Ill.Dec. 747, 445 N.E.2d 39 (1983).

**5.** *Id.* 67 Ill.Dec. at 750, 445 N.E.2d at 42.

**6.** We note that in some ways this case is similar to an Illinois Supreme Court decision in which the Court found that the evidence was wrenched from its context by the plaintiff, and that the

factors cited by the plaintiff were either unsupported by any evidence or could not justify an inference of control. *Puttman v. May Excavating Co.,* 118 Ill.2d 107, 112 Ill.Dec. 722, 514 N.E.2d 188 (1987). While it is convenient to list factors which can be used to prove "control", it must be remembered that the factors should be taken in context and that ultimately the decision should be based on the totality of the circumstances.

every day because the site was only 200 feet away from his office; he was not on the site in any supervisory capacity. As a former iron worker, it is understandable that he would want to talk with the workers, but he had no authority with respect to the manner in which they performed their tasks. Finally, "[a]n owner's observations of the work to determine that he is getting what he is paying for does not make him in charge of the work".[7]

Viewing the evidence in the light most favorable to the plaintiff, there simply is no admissible evidence from which a jury could infer that the Village of Elwood was in charge of the work.

### B. *Common Law Negligence.*

 Having determined that the Village of Elwood could not be held liable under the Structural Work Act because it was not in charge of the work, we can now dispose of the common law negligence claim. Mr. Payne's argument is that the Village of Elwood was negligent in exercising its control over the independent contractor. Section 414 of the Restatement (Second) of Torts (1965), which together with the comments has been recognized as expressing the law of Illinois,[8] states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Most important for the present purposes is Comment c to § 414 which states:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to

prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is *controlled as to his methods of work,* or as to operative detail. *There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.* (emphasis added.)

A thorough review of the record reveals that the Village of Elwood did not retain any right of supervision much less enough so that the contractor was not entirely free to do the work in his own way.

### CONCLUSION

Mayor Archer's interest was little more than the natural curiosity one would have who was the mayor of Elwood, had been a structural steel worker, and frequently saw the work in progress on the job site near his office.

Because there are no genuine issues of material fact with respect to the liability of the Village of Elwood under either the Structural Work Act or common law negligence, summary judgment was entirely appropriate. The judgment of the district court is AFFIRMED.

---

**7.** *Gentile v. Kehe,* 165 Ill.App.3d 802, 117 Ill.Dec. 476, 520 N.E.2d 827, 830 (1987).

**8.** *See, e.g., Haberer v. Village of Sauget,* 158 Ill.App.3d 313, 110 Ill.Dec. 628, 631, 511 N.E.2d 805, 808 (1987) and cases cited therein.