**1106**

Donald P. LULICH, Plaintiff,

v.

SHERWIN–WILLIAMS COMPANY,
a Corporation, Defendant.

No. 89 C 1707.

United States District Court,
N.D. Illinois, E.D.

May 11, 1992.

Richard L. Rumsey, Anesi, Ozmon & Rodin, Ltd., Chicago, Ill., for plaintiff.

William D. Serritella, Raymond Hugo Groble, III, Ross & Hardies, P.C., Chicago, Ill., John A. Hiskes, Michael Jay Marovich, Buikema, Hiskes, Dillner, O'Donnell & Marovich Ltd., South Holland, Ill., Richard G. Howser, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, Ill., for defendant.

### ORDER

NORGLE, District Judge.

Before the court is defendant Sherwin–Williams Company's ("Sherwin–Williams") motion for summary judgment. For the following reasons, the motion is granted.

### FACTS

The plaintiff, Donald P. Lulich ("Lulich"), was employed by Fred P. Berglund & Sons, Inc. ("Berglund").[1] In May 1987, Sherwin–Williams contracted with Berglund to build a boiler house on Sherwin–Williams's industrial facility. On May 21, 1987, Lulich was injured when a scissorslift he ascended rolled into a trench and tipped over. Lulich subsequently filed suit to recover for his injuries under the Illinois Structural Work Act, Ill.Rev.Stat. ch. 48, para. 69 (1991) ("the Act"), and for Illinois common law negligence.

At the time of the incident in question, Sherwin–Williams's industrial facility consisted of approximately twenty acres of land in Chicago, Illinois. Sherwin–Williams drafted the plans for the boiler house project. It also employed a division engineer who represented Sherwin–Williams for the construction project. His duties included oversight of project design, determination of whether construction was carried out according to specifications, verify-

---

1. The facts are taken from the depositions and documents in the record as well as the state-ments of material facts the parties supplied in accordance with Local Rules 12(m) and 12(n).

ing the completion of work phases, and for approving interim payments to contractors. Sherwin–Williams also employed a maintenance superintendent who was responsible for disconnecting utilities in anticipation of the performance of work and for approving work involving heat because of the presence of volatile chemicals at the facility. The maintenance superintendent toured the entire industrial facility including the area of the boiler house project.

Berglund was represented on the boiler house project by a project superintendent and a project manager. Berglund's project superintendent had control over the entire job-site for Berglund. He would also determine whether the Berglund employees were keeping up with the timetable. The project manager was responsible for assuring that the job progressed without problems.

On February 14, 1992, Sherwin–Williams filed the instant motion for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure raising two issues. First, the court must determine whether Sherwin–Williams was in charge of the work Berglund performed for purposes of the Illinois Structural Work Act. Second, the court must determine whether the undisputed facts entitle Sherwin–Williams to judgment on Lulich's claim for common law negligence.

## DISCUSSION

██ Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A plaintiff cannot rest on mere allegations of a claim. *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir.1988). A plaintiff must have significant probative evidence supporting his complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although all reasonable inferences are drawn in favor of the party opposing the motion,

*Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir.1991), a scintilla of evidence will not suffice to oppose a motion for summary judgment. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). Nor will some metaphysical doubt suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Rather, a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

Sherwin–Williams maintains that it is entitled to summary judgment because the undisputed facts establish that it was not "in charge of" the work for the purposes of the Structural Work Act. *See* Ill.Rev.Stat. ch. 48, para. 69 (1991). To establish liability under the Structural Work Act, Lulich must prove that (1) a scaffold or other supporting device covered by the Act was involved, (2) the device was used in the construction of a structure, (3) the device was unsafe in design, placement or operation, (4) a defendant (who was "in charge of" the work) willfully violated the Act, and (5) that plaintiff's injury was proximately caused by defendant's violation. *Ryan v. E.A.I. Constr. Corp.*, 158 Ill.App.3d 449, 457, 110 Ill.Dec. 924, 929, 511 N.E.2d 1244, 1249 (1st Dist.1987); *see also Savic v. United States*, 918 F.2d 696, 699 (7th Cir. 1990); *Fulton v. United States*, 772 F.Supp. 1074, 1076 (N.D.Ill.1991).

The Act specifically requires a defendant to be "in charge of the work." Ill.Rev. Stat. ch. 48, para. 69 (1991). A defendant

is "in charge of the work" if, under the totality of the circumstances, he had "some responsibility and opportunity to prevent dangerous work methods at the construction site" regardless of whether the defendant directly supervised the specific activity during which the injury occurred. *Ryan*, 158 Ill.App.3d at 457, 110 Ill.Dec. at 929, 511 N.E.2d at 1249. In making this determination, Illinois law requires a court to consider and weigh several factors:

1. supervision and control of the work;
2. retention of the right to supervise and control;
3. constant worksite participation in ongoing activities;
4. supervision and coordination of subcontractors;
5. responsibility for safety precautions at the job site;
6. authority to issue change orders;
7. authority to stop the work;
8. ownership of equipment used in the work;
9. knowledge of construction practices; and
10. opportunity to assure worker safety or to rectify equipment problems or improper work practices.

*Chance v. City of Collinsville*, 112 Ill. App.3d 6, 67 Ill.Dec. 747, 750, 445 N.E.2d 39, 42 (5th Dist.1983); *see also Payne v. Village of Elwood*, 957 F.2d 517, 519 (7th Cir.1992). The purpose of the Act is to provide protection to workers by extending liability to "owners and others who have charge of the erection or alteration of any building or structure." *Emberton v. State Farm Mut. Auto. Ins. Co.*, 71 Ill.2d 111, 117, 15 Ill.Dec. 664, 666, 373 N.E.2d 1348, 1350 (1978) (citing *Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, 321–22, 211 N.E.2d 247, 251 (1965)). Nonetheless, "an owner must have some direct connection with the operations, over and above

mere ownership or the employment of an independent contractor." *Id.* at 123, 15 Ill.Dec. 664, 373 N.E.2d 1348 (citing *Larson*, 33 Ill.2d at 322, 211 N.E.2d 247).

Applying these factors to the present case, the court concludes that Sherwin–Williams was not in charge of the work for purposes of the Structural Work Act. Sherwin–Williams did not supervise the construction project beyond checking progress and conformity with the contract.[2] There is no evidence in the record of any detailed inspections by any of Sherwin–Williams's employees. Further, Sherwin–Williams did not control the manner in which Berglund was to perform its work. Sherwin–Williams did not retain the right to supervise and control the means or methods of construction. The contract provided that Burglund was responsible for the means, methods, techniques, sequences, and procedures for the construction. Sherwin–Williams did not tell Berglund's project superintendent what work to perform or how to perform its work. The project superintendent did not report to any representative of Sherwin–Williams. Sherwin–Williams did not participate in Berglund's progress meetings or safety meetings. One can not be held liable for "merely requiring compliance with the contract and insuring the quality of the work." *Gentile v. Kehe*, 165 Ill.App.3d 802, 806, 117 Ill.Dec. 476, 479, 520 N.E.2d 827, 830 (1st Dist.1987).

Sherwin–Williams had no constant participation in ongoing activities. Berglund's employees reported to the Berglund foreman or project superintendent and not to any Sherwin–Williams representative. Berglund's project superintendent's communications with Sherwin–Williams's representatives was limited to discussions concerning where to locate a dumpster or to park a truck. Sherwin–Williams was not involved in any day-to-day activities of

---

**2.** In attempting to create a dispute as to the material facts, plaintiff wrests the facts from their context to create inferences which the record does not support. Plaintiff mischaracterizes Sherwin–Williams's maintenance superintendent's involvement in the construction project by repeatedly stating he "walked the

sight daily looking for unsafe work situations." That was not the reason for his circulation through the entire industrial facility, and he did not limit his tour to the boiler house project. His purpose was not to check safety. He merely indicated in his deposition that if he saw something unsafe he would report it.

Berglund's employees. Nor did Sherwin–Williams supervise or coordinate the subcontractors on Berglund's job, although it retained the right to issue separate bids for different phases of the construction project.

Additionally, Sherwin–Williams did not assume responsibility for safety precautions. Sherwin–Williams's maintenance superintendent stated in his deposition that he did not control the contractors "safety-wise." Sherwin–Williams was involved in safety at the industrial facility if it lent some of its employees to contractors for help with specific jobs. Although Sherwin–Williams's maintenance superintendent stated he would have brought hazardous conditions to the attention of Berglund's foreman if he had spotted any, it was not his primary responsibility to do so. Furthermore, the contract made Berglund responsible for initiating, maintaining, and supervising all safety precautions and programs. Berglund was responsible for erecting barriers or other similar devices as necessary. Sherwin–Williams did provide safety regulations for contractors, but Berglund remained ultimately responsible for assuring conformity with them. Berglund expected its employees to follow its own safety rules even if Sherwin–Williams instructed them to do otherwise.

Moreover, Berglund was responsible for providing the "correct and safe" equipment for its work. It delivered equipment to the job site, including the scissors lift involved in the accident, although Sherwin–Williams loaned one piece of equipment for a limited time and purpose. Last, Sherwin–Williams was not in a position to ensure workers' safety by correcting unsafe habits and equipment deficiencies. In *Savic v. United States*, 918 F.2d 696 (7th Cir.1990), the Seventh Circuit noted that it was "at best highly questionable and nigh unto impossible for the government to be in a position to assure worker safety or alleviate equipment deficiencies or improper work habits (the tenth element), given that the government inspectors visited the construction site only once or twice during an ordinary work day." *Savic*, 918 F.2d at 701. Considering that Sherwin–Williams's mainte-

nance superintendent only toured the site not more than once a day, the same conclusion is appropriate in this case.

Of the ten factors, only three point to Sherwin–Williams: it had authority to issue change orders, it had the authority to stop the work, and its representatives were familiar with construction practices. There is some dispute whether Sherwin–Williams's authority to stop work included the authority to stop work for safety violations. The project manager did not think he could stop the work for safety violations. Contractually, Sherwin–Williams only possessed a limited right to stop the work for the purpose of quality control— for failure to correct defective work or failure to carry out work in accordance with contract specifications. On the other hand, one sentence in a document entitled "The Sherwin–Williams Company—Regulations for Contractors," states "[l]ack of ... safety measures will result in job stoppage by [Sherwin–Williams's] Safety Department." However, the dispute over this one factor is not material. *See, e.g., Savic*, 918 F.2d at 703 (defendant not "in charge of" work although it retained the authority to stop work for safety problems); *Weddington v. United States*, No. 89 C 03245, 1991 WL 94046, 1991 U.S.Dist.LEXIS 7065 (N.D.Ill. May 24, 1991) (same). Additionally, Sherwin–Williams did not exercise its right to stop the work.

A numerical calculation is not involved when determining whether a defendant was in charge of the work, *see Fulton v. United States*, 772 F.Supp. 1074, 1077 (N.D.Ill.1991), but it is particularly informing, especially when the only three elements leaning in Lulich's favor are weak. *See Burger v. Prairie Development, Ltd.*, 218 Ill.App.3d 814, 161 Ill.Dec. 467, 578 N.E.2d 1113 (1st Dist.1991), (affirmed summary judgment for defendant on whether defendant was "in charge of" work where these same three factors were also the only ones present). Under the totality of the circumstances, these are not sufficient to hold that Sherwin–Williams was in charge of the work.

Sherwin–Williams also claims it is entitled summary judgment on the common law negligence claim. Illinois has adopted section 414 of the *Restatement (Second) of Torts* (1965) together with the comments accompanying the section. *Payne v. Village of Elwood,* 957 F.2d 517, 519 (7th Cir.1992) (citing *Haberer v. Village of Sauget,* 158 Ill.App.3d 313, 110 Ill.Dec. 628, 631, 511 N.E.2d 805, 808 (5th Dist.1987)). Section 414 imposes liability upon an employer of an independent contractor when the independent contractor injures one to whom the employer owed a duty, as long as the employer retains control of any part of the work.

Comment c to this section provides:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

As the analysis above illustrates, Sherwin–Williams did not possess sufficient supervisory rights or control over work methods so as to prohibit Berglund from freely performing its work in its own way. Consequently, Sherwin–Williams cannot be liable under this section and is entitled to judgment as a matter of law. *Cf. Payne v. Village of Elwood,* 957 F.2d 517, 519–20 (7th Cir.1992) (summary judgment appropriate for negligence claim where control over work not found under both Structural Work Act analysis and Restatement § 414 analysis).

## CONCLUSION

For the reasons stated above, Sherwin–Williams's motion for summary judgment as to both Counts I and II is granted.

IT IS SO ORDERED.